LEWIS WATSON *vs.* THE PRESIDENT, DIRECTORS, &C. OF
THE NEW ENGLAND BANK.

In an action in this State on a judgment of a court in another State, rendered for costs
against a plaintiff in a suit commenced there, he may defend successfully by show-
ing that he gave no authority to institute such suit, and had no knowledge thereof
before judgment was rendered therein.

Where the holder of a draft, indorsed in blank, writes over the indorser's name a
direction to pay the contents to the president of a bank in which he places it for
collection merely, and the bank upon non-payment of the draft at maturity rede-
livers it to the holder, without cancelling such direction, no authority is thereby
given to the holder to institute a suit on the draft in the name of the bank.

DEBT on a judgment for costs, rendered by the supreme ju-
dicial court of the State of Maine.

The case was submitted to the court on these facts agreed by the
parties : At a term of the supreme judicial court of Maine, held
at Bangor, on the fourth Tuesday of October 1839, in an ac-
tion there pending in the name of the New England Bank, as
plaintiffs, and the said Watson, as defendant, judgment was ren-
dered in favor of said Watson for $ 59·91 costs, upon a non-
suit.  The action, in which said judgment was rendered, was
founded on the following draft : " Bangor, Jany. 1st 1836.  Six
months from date please pay our own order $ 761·25, value re-
ceived, and payable to the Eastern Bank.

To David Watson.                     L. Watson & Co.

        Accepted : David Watson."

On the back of said draft were the following indorsements .
" Pay P. Marett, Prest., or order.  L. Watson & Co."  " Pay
W. H. Foster, Esq. or order.  P. Marett, Prest."     The
name of P. Marett, Prest., as last indorser, was erased.

" If the rules of law permit the defendants to prove the facts
and history of said draft and said suit thereon, (which the plain-
tiff denies,) they are to be taken as follows : Ellis & Raymond
of Boston, being the owners of the draft, on 9th of June prior
to its maturity, deposited the same with the New England Bank
for collection ; the direction to ' pay the same to P. Marett,
Prest. or order ' being first indorsed thereon.  The bank then
transmitted the draft for collection.  It was not paid, but was

protested and returned to said bank, who redelivered the same to said Ellis & Raymond, first striking out the indorsement of its president, ' P. Marett, Prest.,' but leaving the draft specially payable to said bank or its president.  Subsequently, Ellis & Raymond sent the same, without the privity of the bank, to an attorney in Bangor, to be sued, but gave no directions as to the manner of bringing the suit.  The bank never authorized the use of its name in the said suit, unless redelivering the said draft to Ellis & Raymond, so made specially payable to its president, was such an authorization ; nor had the bank any notice that said draft was, or was to be, sued, or of the existence or pendency of the said suit, until after judgment was recovered against them, and execution presented for payment.

" By the law of Maine, no suit could be brought on the said draft, as it then stood, except in the name of the bank.  The suit was instituted by the attorney of Ellis & Raymond, in the name of the bank, in good faith."

On these facts, the court of common pleas rendered judgment for the plaintiff ; from which judgment the defendants appealed to this court.

*T. P. Chandler*, for the plaintiff.

*Bartlett*, for the defendants.

WILDE, J.* We have already decided, during this term, in the case of *Gleason* v. *Dodd*, (*ante*, 333,) that in an action on a judgment of a court of another State, the defendant may defend, by showing that such court had no jurisdiction of his person ; and that he may, for that purpose, show that he had no legal notice of the original suit, and never authorized any one to use his name or appear for him in that suit ; unless, from the record of such judgment, it appears affirmatively, and as a matter of adjudication, that he had legal notice, or duly authorized an appearance.  And we held, in that case, that the mere recital in the judgment, that the party " came in," did not show conclusively, that he had legal notice, or that he appeared in person and submitted to the jurisdiction, or that he authorized any one

---

* The chief justice did not sit in this case

to appear for him. That case, therefore, is decisive of the present, unless the defendants, by redelivering the draft without erasing the special indorsement by which it was made payable to them, in legal effect authorized a suit to be brought thereon in their name. But we think it very clear that no such authority was thereby given to the holders of the draft.

Without deciding whether the defendants could legally and properly cancel the indorsement made specially to them, there is no doubt, under the circumstances of the case, that the mere redelivery of the draft to Ellis & Raymond, from whom they received it for collection only, conferred no power on them to sue it in the name of the defendants.

We understand, from the statement of facts, that Ellis & Raymond received the draft indorsed in blank, and that they wrote over the indorser's name the direction to pay the same to the defendants, when they deposited it in the bank for collection. They, therefore, might have struck out this direction, when the draft was returned to them, and they ought to have done so before they put it in suit ; unless they had obtained the authority of the defendants to proceed upon it in their names. This authority they did not obtain, as the case finds, unless such authority is a necessary legal inference from the mere fact that the defendants redelivered the draft to them with the special indorsement uncancelled. But no such inference can be deduced from this fact. The defendants had no interest in the draft. It was indorsed to them merely to authorize them to collect it. And when they had transmitted it to Maine for collection, and it was returned to them unpaid, the special indorsement was *functus officio.* The defendants thereupon did all that was required to protect themselves against third persons, by erasing their own indorsement, and then redelivered the draft to the owners, in the same state in which they received it. In so doing, they neither intended to give, nor did they in law give, any new rights or power to the owners of the draft.

*Plaintiff nonsuit.*